1

2                                                      **E-Filed 3/20/06**

3

4

5

6

7                              NOT FOR CITATION

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11

12   IN RE NEXTCARD, INC. SECURITIES           Case Number C 01-21029 JF (RS)
     LITIGATION.
13                                             ORDER DENYING MOTIONS TO
                                               DISMISS SECOND AMENDED
14   _____           COMPLAINT AS TO DEFENDANTS
                                               LENT, HASHMAN, RIGIONE AND
15   THIS DOCUMENT RELATES TO ALL              CAI; AND GRANTING MOTION TO
     ACTIONS.                                  DISMISS SECOND AMENDED
16                                             COMPLAINT WITHOUT LEAVE TO
                                               AMEND AS TO DEFENDANT
17                                             QURESHEY

18                                             [Doc. Nos. 263, 266, 267, 269, 272,
                                               277, 278]
19

20

21

22        Before the Court are motions to dismiss Plaintiffs' consolidated second amended class

23   action complaint ("SAC") brought by Defendants Jeremy Lent ("Lent"), John Hashman

24   ("Hashman"), Bruce Rigione ("Rigione"), Yinzi Cai ("Cai"), and Safi Qureshey ("Qureshey").

25   The Court has considered the parties' papers as well as the oral arguments presented at the

26   hearing on October 28, 2005.  For the reasons discussed below, the motions to dismiss will be

27   denied as to Defendants Lent, Hashman, Rigione and Cai, and granted without leave to amend as

28   to Defendant Qureshey.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. BACKGROUND

This is a stock-drop securities class action suit originally filed against NextCard, Inc. ("NextCard") and several of its officers and directors.  The Court dismissed Plaintiffs' first amended consolidated class action complaint ("FAC") with leave to amend on February 7, 2005, and Plaintiffs filed the operative SAC on April 27, 2005, alleging in great detail a scheme by which NextCard and several of its officers and directors used "accounting gimmickry" to inflate the company's financial results.  In broad outline, Plaintiffs' claims are as follows:

NextCard was an Internet-based provider of consumer credit that offered an online credit approval system for a Visa card through its wholly-owned subsidiary, NextBank.[1]  SAC ¶ 2. Between April 19, 2000 and October 30, 2001 ("the class period"), NextCard and several of its officers and directors made false or misleading statements to the market indicating that the Internet credit card business was a success and was growing at a dramatic rate.  *Id.* at ¶¶ 143-166. Form 10Qs and 10Ks filed during this period misrepresented the company's financials and were not prepared in accordance with GAAP.[2]  *Id.* at ¶¶ 132-39.  Specifically, the company "understated its loan loss allowances, provision for loan losses and charge-off rates by improperly reclassifying certain credit losses as fraud losses and employing inappropriate methodology for determining loan loss allowances."  *Id.* at ¶ 135.  These practices allowed the company to overstate its reported net interest income and understate its net losses during the class period.  *Id.*  The company also understated its risk-weighted assets and overstated its risk-based capital ratio by failing to include in its risk-weighted assets credit losses that had been classified as fraud losses and sold to third parties.  *Id.*

On October 31, 2001, the company issued a press release stating that, as a result of discussions with the Office of the Comptroller of the Currency ("OCC") and the Federal Deposit Insurance Corporation ("FDIC"), the company needed to take several steps to increase its reserves and limit its lending activities.  *Id.* at ¶ 113.  These steps included substantially

---

[1] For ease of reference, NextCard and NextBank are referred to collectively as "NextCard" or "the company."

[2] Generally Accepted Accounting Principles.

2

1   increasing loan loss allowances; tightening underwriting criteria; reclassifying previously

2   recognized fraud losses as credit losses; and increasing risk weighted assets by more than $500

3   million. *Id.* at ¶¶ 113-14. These disclosures caused NextCard's stock to decline 84% to $.87 per

4   share. *Id.* at ¶ 117. On February 7, 2002, the OCC closed NextBank and appointed the FDIC as

5   Receiver. *Id.* at ¶ 121. The company was delisted from NASDAQ on March 18, 2002 and filed

6   for bankruptcy on November 14, 2002. *Id.* at ¶ 123. The OCC, FDIC and SEC initiated separate

7   investigations into the events leading up to the company's demise. *Id.* at ¶ 122.

8        Plaintiffs allege a claim under § 10(b) of the Securities Exchange Act of 1934

9   ("Exchange Act") against Defendants Lent, Hashman, Rigione and Cai, and a control person

10  claim under to § 20(a) against these four individuals plus Defendant Qureshey.[3]

11                               **II. DISCUSSION**

12  **B.    Section 10(b) Claim**

13       **1.    Elements Of A § 10(b) Claim**

14       The United States Supreme Court has clarified that only two types of conduct give rise to

15  liability under § 10(b) and Rule 10-b(5) promulgated thereunder: (1) the making of a material

16  misstatement or omission or (2) the commission of a manipulative act. *Central Bank of Denver*

17  *v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994). While Plaintiffs assert that

18  Defendants engaged in a "fraudulent scheme" during the class period, *see* SAC ¶ 4, a

19  straightforward reading of the SAC makes clear that the gravamen of Plaintiffs' § 10(b) claim is

20  that Defendants committed fraud on the market by means of material misstatements or

21  omissions. Under the fraud on the market theory, it is assumed that an investor who buys or sells

22  stock at the price set by an efficient market does so in reliance on the integrity of that price.

23  *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988). Because publicly available information is

24  reflected in the market price, an investor's reliance on the price necessarily means that the

25  investor is relying upon any public material misrepresentations or omissions. *Id.*

26  _____

27      [3] Plaintiffs do not assert claims against NextCard because of the company's bankruptcy.
    Plaintiffs have reached settlement with respect to claims against NextCard's outside auditor,
28  Ernst & Young, LLP.

                                         3

1    Plaintiffs do not use the term "fraud on the market," and cast a number of their

2    allegations in terms of the alleged "scheme" entered into by Defendants.  However, Plaintiffs

3    identify the common class questions as:  (a) whether Defendants issued false and misleading

4    statements during the class period; (b) whether Defendants acted with scienter in issuing such

5    statements; (c) whether Defendants are liable as control persons of the company; (d) whether the

6    market price of NextCard stock during the class period was artificially inflated because of

7    Defendants' conduct; and (e) whether class members have been damaged.  SAC ¶ 19.

8    Accordingly, while allegations that Defendants were involved in a "scheme" are relevant to paint

9    a picture of what was going on at the company during the class period, and may be relevant to the

10   question of scienter, the Court's focus must be on the alleged misrepresentations and omissions

11   made by Defendants.

12    The elements of a § 10(b) claim involving publicly traded securities are as follows:  (1) a

13   material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of

14   a security; (4) reliance, often referred to in fraud on the market cases as "transaction causation";

15   (5) economic loss; and (6) loss causation, i.e., a causal connection between the material

16   misrepresentation and the loss.  *Dura Pharmaceuticals, Inc. v. Broudo*, --- U.S. ----, 125 S.Ct.

17   1627, 1631 (2005).

18    A dispute has arisen between the parties as to whether Plaintiffs may use the "group

19   published pleading doctrine."  Prior to the passage of the Private Securities Litigation Reform

20   Act of 1995 ("PSLRA"), Pub.L. No. 104-67 (1995), the Ninth Circuit held in a number of cases

21   that when false or misleading information is conveyed in prospectuses, registration statements,

22   annual reports, press releases, or other group published statements, it is reasonable to presume

23   that the statements are the result of the collective actions of the company's officers.  *See, e.g.,*

24   *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988); *Wool v. Tandem Computers, Inc.*, 818

25   F.2d 1433, 1440 (9th Cir. 1987).  It is an open question in this circuit whether the group

26   published pleading doctrine survives the PSLRA.  Some district courts within the circuit have

27   concluded that the group published doctrine is alive and well.  *See, e.g., In re Secure Computing*

28   *Corp. Sec. Litig.*, 120 F.Supp.2d 810, 821-22 (N.D. Cal. 2000) (collecting cases); *Silicon*

4

1  *Graphics Sec. Litig.*, 970 F.Supp. 746, 759 (N.D. Cal. 1997).  Other district courts have

2  concluded the opposite.  *See, e.g., In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 1031

3  (S.D. Cal. 2005); *In re Syncor Intern. Corp. Sec. Litig.*, 327 F.Supp.2d 1149, 1171-72 (C.D. Cal.

4  2004).

5       The Fifth Circuit, the only circuit squarely to address the issue, has concluded that the

6  group published pleading doctrine does not survive the PSLRA because the doctrine is

7  inconsistent with PSLRA requirements that statements or omissions be set forth with

8  particularity as to *each* defendant and that scienter be pleaded in a manner sufficient to give rise

9  to a *strong inference* that each defendant acted with the required state of mind.  *Southland Sec.*

10  *Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004).

11      This Court adopts the reasoning of the decisions concluding that the group published

12  pleading doctrine no longer is viable after the PSLRA.  As noted by the Fifth Circuit, it appears

13  to be totally inconsistent with the particularity requirements of the PSLRA to hold corporate

14  officers "responsible for unattributed corporate statements solely on the basis of their titles, even

15  if their general level of day-to-day involvement in the corporation's affairs is pleaded."

16  *Southland*, 365 F.3d at 365.

17      The Court's conclusion makes little difference in the present case, because Plaintiffs do

18  not rely solely on the group published pleading doctrine, but also allege explicitly that

19  Defendants Lent, Hashman, Rigione and Cai participated in the preparation of the company's

20  press releases and SEC filings.  Section 10(b) liability extends to those who substantially

21  contribute to the drafting of the allegedly misleading statements.  *See In re Homestore.com, Inc.*

22  *Sec. Litig.*, 252 F.Supp.2d 1018, 1041 (2003) (holding that § 10(b) extends only to those

23  "connected in some material way to the drafting of the statements made to the investing public").

24  Plaintiffs allege that Lent, Hashman, Rigione and Cai "participated in the preparation and review

25  of the Company's press releases and SEC filings.  Thus, the false and misleading statements

26  included in press releases and SEC filings were made by and are attributable to all of the

27  defendants because the press releases and SEC filings were the collective actions of these

28  defendants."  SAC ¶ 16.

Case No. C 01-21029 JF (RS)
ORDER DENYING MOTIONS TO DISMISS SAC AS TO LENT, HASHMAN, RIGIONE AND CAI ETC.
(JFLC2)

1

2.     **Pleading Standards For § 10(b) Claim**

2        Claims asserted under the Exchange Act as amended by the PSLRA must meet

3  heightened pleading requirements.  For example, a claim based upon a material

4  misrepresentation or omission must "specify each statement alleged to have been misleading" as

5  well as "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  If

6  an allegation regarding the statement or omission is made on information and belief, the

7  complaint "shall state with particularity all facts on which that belief is formed."  *Id.*  In addition,

8  a claim based upon a material misrepresentation or omission must "state with particularity facts

9  giving rise to a strong inference that the defendant acted with the required state of mind."  15

10 U.S.C. § 78u-4(b)(2).  When a claim is based upon a forward-looking statement, the required

11 state of mind generally is "actual knowledge" that the statement is false or misleading.  15 U.S.C.

12 § 78u-5(c)(1)(B).  Otherwise, the required state of mind is, at a minimum, "deliberate

13 recklessness."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (1999).

14       In order meet the pleading standard for scienter, the plaintiff "must provide, in great

15 detail, all the relevant facts forming the basis of her belief."  *Silicon Graphics*, 183 F.3d at 985.

16 "'[T]he complaint must contain allegations of specific contemporaneous statements or conditions

17 that demonstrate the intentional or deliberately reckless false or misleading nature of the

18 statements when made.'"  *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003)

19 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)).  It is insufficient that the

20 allegations raise a "reasonable inference" that the defendants acted with the requisite state of

21 mind; the allegations must be sufficiently particularized to raise a "strong inference."  *Id.* at 848-

22 49.

23       Unusual or suspicious stock sales may constitute circumstantial evidence of scienter.

24 *Silicon Graphics*, 183 F.3d at 986.  However, "insider trading is suspicious only when it is

25 'dramatically out of line with prior trading practices at times calculated to maximize the personal

26 benefit from undisclosed inside information.'"  *Id.* (quoting *In re Apple Computer Sec. Litig.*,

27 886 F.2d 1109, 1117 (9th Cir.1989)).  A plaintiff relying upon stock sales therefore must allege

28 specific facts regarding the circumstances of the alleged stock sales, such as the amount of shares

6

1   sold, the percentage of shares sold in comparison to the volume of shares that could have been

2   sold, the timing of the sales and whether the sales were consistent with prior trading history. *Id*.

3   When determining the percentage of shares sold, stock options must be considered; there is no

4   reason to distinguish vested stock options from shares because the former easily can be converted

5   to shares and sold immediately. *Id*.

6   **3.    Statements Of Lent, Hashman, Rigione and Cai**

7        In its order dismissing the FAC with leave to amend, the Court identified a number of

8   material misstatements alleged to have been made by Defendants, but concluded that Plaintiffs

9   had not sufficiently alleged that the statements were false or misleading, or that Defendants had

10  acted with the requisite scienter.  The Court concludes that Plaintiffs have cured these defects in

11  their SAC.  Plaintiffs adequately allege a number of statements and why those statements were

12  false or misleading when made.  SAC ¶¶ 142-166.  They describe in detail the alleged financial

13  difficulties of the company and Defendants' attempts to conceal these difficulties through

14  inappropriate accounting practices.  Finally, Plaintiffs identify the specific accounting practices,

15  explain why those practices violated GAAP and why the company's resulting financials were

16  misleading.  *Id.* at ¶¶ 132-139.

17       Plaintiffs also allege in detail facts demonstrating that the individual defendants knew

18  about, and participated in, the allegedly inappropriate accounting practices.  SAC ¶¶ 11-14.

19  Defendants argue that even if Defendants knew about the accounting practices that ultimately

20  were deemed inappropriate – for example, that the company was reclassifying credit losses as

21  fraud losses – the SAC does not allege facts demonstrating that Defendants knew the accounting

22  practices were inappropriate *at the time*.  Defendants claim that the OCC's later determinations

23  that the company had acted inappropriately surprised Defendants and the industry.  While

24  Defendants certainly may re-assert this argument in future motion practice, the Court concludes

25  that for purposes of the instant motions to dismiss Plaintiffs have alleged facts sufficient to raise

26  a strong inference that Defendants knew that the accounting practices were inappropriate.  For

27  example, Plaintiffs point to Defendant Hashman's handwritten notation regarding "2/3 more

28  quarters of accounting gimmickery," along with numerous internal emails, reports and

7

1    memoranda focused on ways to reclassify loans to make the company's financial picture look

2    better. *Id.* at ¶ 11(h)-(m). Plaintiffs also allege that Defendants *changed* the company's

3    accounting practices during the class period, for example, the ways in which the company

4    calculated loan loss reserves, in order to make the company's financial picture look better. *Id.* at

5    ¶ 11(o). Plaintiffs describe how the individual defendants met daily to devise ways to reduce

6    loan losses. *Id.* at ¶ 12(e). Defendant Cai was warned by a senior officer of the company that the

7    new treatment of fraud losses and credit losses was inappropriate. *Id.* at ¶ 12(f). Defendant Lent

8    received weekly status reports regarding the need to reclassify more credit losses into fraud

9    losses. *Id.* at ¶ 13(e). Defendant Rigione received memoranda informing him that the company

10   was adjusting its charge-off rates after excluding delinquent loans that had been categorized as

11   loans for sale, and Rigione knew that this methodology was improper. *Id.* at ¶ 14(f)-(g).

12          The Court concludes that the factual allegations in the SAC, taken as a whole, are

13   sufficient to give rise to a strong inference of Defendants' scienter. The Court is not persuaded

14   by Defendants' argument that the certification of the company's financials by its outside auditor,

15   Ernst & Young, LLP ("E&Y"), negates or weakens the inference of scienter. Plaintiffs originally

16   named E&Y as a defendant in this action based upon allegations that E&Y was a knowing

17   participant in a scheme to defraud the market and in colluded in accounting improprieties. E&Y

18   has settled with Plaintiffs. Under these circumstances, the fact that E&Y certified the financials

19   does not raise an inference that the financials were appropriate or that Defendants were entitled

20   to rely upon E&Y's certification.

21          The Court notes that three of the four Defendants named in the § 10(b) claim sold stock

22   during the class period. While the stock sales resulted in large monetary profits (approximately

23   $7.5 million for Lent), the percentage of stock sold was not excessive (less than 15% for Lent)

24   and it is not clear that the sales were out of line with prior activity. Plaintiffs do allege, however,

25   that the sales occurred after Lent instructed company employees not to sell stock for fear of

26   depressing the stock price. SAC ¶ 142. It is somewhat suspicious that three out of the four

27   individual defendants sold anyway.

28          In summary, the Court concludes that Plaintiffs have cured the defects noted in the

8

1  Court's prior order, and have alleged facts sufficient to state a § 10(b) claim against Defendants

2  Lent, Hashman, Rigione and Cai.

3  **B.      Section 20(a) Claim**

4      Section 20(a) of the Exchange Act imposes joint and several liability on any "person who,

5  directly or indirectly, controls any person liable" for securities fraud, "unless the controlling

6  person acted in good faith and did not directly or indirectly induce" the violations.  15 U.S.C. §

7  78t(a).  Plaintiffs allege a § 20(a) claim against Lent, Hashman, Rigione and Cai, and also against

8  Qureshey.

9      The Court concludes that Plaintiffs have alleged a sufficient factual basis to impose

10 control person liability against Lent, Hashman, Rigione and Cai.  Plaintiffs allege with

11 particularity what positions each of these individuals held, and how and to what extent these

12 individuals participated in the day to day workings of the company.  SAC ¶¶ 11-14.

13     However, the Court concludes that Plaintiffs have not alleged a sufficient factual basis to

14 impose control person liability against Qureshey.  Unlike the other individual defendants,

15 Qureshey was an outside director of the company and a member of the Audit Committee and

16 Compensation Committee.  SAC ¶ 15(a).  The Court is unaware of any authority for the

17 proposition that an outside director may be held liable under § 20(a).  Moreover, while Plaintiffs

18 do allege that Qureshey met with the company's CFO to review accounting policies, financial

19 statements and the like, Plaintiffs do not allege that Qureshey was involved in the day to day

20 management of the company.  *See* SAC ¶¶ 15(b)-(g).  Accordingly, the § 20(a) claim against

21 Qureshey is subject to dismissal.

22     Leave to amend is to be granted with extreme liberality in securities fraud cases, because

23 the heightened pleading requirements imposed by the PSLRA are so difficult to meet.  *Eminence*

24 *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The United States Supreme

25 Court has articulated the applicable standard as follows:

26     In the absence of any apparent or declared reason – such as undue delay, bad faith
       or dilatory motive on the part of the movant, repeated failure to cure deficiencies
27     by amendments previously allowed, undue prejudice to the opposing party by
       virtue of allowance of the amendment, futility of amendment, etc. – the leave
28     sought should, as the rules require, be "freely given."

9

1  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, given the nature of Qureshey's position with

2  the company, and the absence of authority for holding an individual in his position liable under §

3  20(a), together with the fact that Plaintiffs have failed to assert a viable claim against Qureshey

4  on two separate occasions, the Court concludes that granting leave to amend the § 20(a)

5  allegations against Qureshey would be futile.  Accordingly, the Court concludes that leave to

6  amend is not appropriate notwithstanding the liberal standards set forth above.

7  ### III. ORDER

8      (1)    The motions to dismiss of Defendants Lent, Hashman, Rigione and Cai are
      DENIED; and

9
10      (2)    The motion to dismiss of Defendant Qureshey is GRANTED WITHOUT LEAVE
      TO AMEND.

11

12

13

14

15  DATED:  3/20/06

16

17  _____
      JEREMY FOGEL

18  United States District Judge

19

20

21

22

23

24

25

26

27

28

Case No. C 01-21029 JF (RS)
ORDER DENYING MOTIONS TO DISMISS SAC AS TO LENT, HASHMAN, RIGIONE AND CAI ETC.
(JFLC2)

1   This Order has been served upon the following persons:

2

3   Eric J. Belfi     ebelfi@murrayfrank.com

4   Gustavo Bruckner     bruckner@whafh.com

5   Joy Ann Bull     JOYB@lerachlaw.com

6   Paul J. Collins     pcollins@gibsondunn.com

7   Jonathan C. Dickey     jdickey@gibsondunn.com

8   Tamara J. Driscoll     ,

9   Alicia M. Duff     aliciad@blbglaw.com, kayem@blbglaw.com

10  Bruce A. Ericson     bruce.ericson@pillsburylaw.com

11  Jordan David Eth     jeth@mofo.com

12  Mary Jane Edelstein Fait     fait@whafh.com,

13  William Faulkner     wfaulkner@mfmlaw.com, eschneider@mfmlaw.com

14  Lionel Z. Glancy     info@glancylaw.com

15  Michael M. Goldberg     info@glancylaw.com

16  Marc S. Henzel     mhenzel182@aol.com

17  Bruce J. Highman     attorneys@highman-ball.com

18  David M. Jolley     djolley@cov.com,

19  Richard Allen Jones     rjones@cov.com

20  J. Andrew Keyes     akeyes@wc.com,

21  Charles Thomas Kimmett     ckimmett@wc.com,

22  Jeffrey W. Lawrence     jeffreyl@lerachlaw.com, e_file_sd@lerachlaw.com;
23  e_file_sf@lerachlaw.com

    Kristin M. Lefevre     kristin.lefevre@pillsburylaw.com
24
    William S. Lerach     e_file_sd@lerachlaw.com, e_file_sf@lerachlaw.com
25
    James McManis     jmcmanis@mfmlaw.com, clarsen@mfmlaw.com; smaes@mfmlaw.com
26
    Ira M. Press     ipress@kmslaw.com, lmorris@kmslaw.com
27
    Paul A. Reynolds     paul.reynolds@dlapiper.com,
28

11

1    Laurence M. Rosen     lrosen@rosenlegal.com, larry.rosen@earthlink.net

2    Alan Schulman     alans@blbglaw.com, robert@blbglaw.com; kristinas@blbglaw.com;
     takeok@blbglaw.com; marenam@blbglaw.com; kayem@blbglaw.com

3

4    Christopher Paul Seefer     chriss@lerachlaw.com, e_file_sd@lerachlaw.com;
     e_file_sf@lerachlaw.com; KiyokoF@lerachlaw.com

5    Jacob R. Sorensen     jake.sorensen@pillsburylaw.com

6    Shirli Fabbri Weiss     shirli.weiss@dlapiper.com

7    Margaret L. Wu     mwu@mofo.com, pwolfe@mofo.com

8    John S. Yun     yunj@sec.gov, johnstonj@sec.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28